UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    Plaintiff,

          -v-                                              19 Civ. 9600 (AEK)

MARK FORD, MARK FORD STABLES, INC.,
MARK FORD STAGE ROAD PROPERTY, INC.,
and FORD EQUINE, LTD.,

                    Defendants.

**<u>CONSENT DECREE</u>**

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE .............................................................................................. 1
II.     ADMISSIONS ..................................................................................................................... 2
III.    APPLICABILITY ................................................................................................................ 3
IV.     DEFINITIONS ..................................................................................................................... 4
V.      CIVIL PENALTY ................................................................................................................ 5
VI.     INJUNCTIVE RELIEF ........................................................................................................ 6
VII.    REPORTING AND MEETING REQUIREMENTS ........................................................... 10
VIII.   STIPULATED PENALTIES .............................................................................................. 12
IX.     FORCE MAJEURE ........................................................................................................... 14
X.      DISPUTE RESOLUTION ................................................................................................. 15
XI.     INFORMATION COLLECTION AND RETENTION ........................................................ 17
XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ............................................ 18
XIII.   COSTS ............................................................................................................................. 19
XIV.    NOTICES ......................................................................................................................... 19
XV.     EFFECTIVE DATE ........................................................................................................... 20
XVI.    RETENTION OF JURISDICTION .................................................................................... 20
XVII.   MODIFICATION .............................................................................................................. 20
XVIII.  TERMINATION ................................................................................................................ 21
XIX.    PUBLIC PARTICIPATION ............................................................................................... 21
XX.     SIGNATORIES/SERVICE ................................................................................................ 21
XXI.    INTEGRATION ................................................................................................................ 21
XXII.   26 U.S.C. § 162(F)(2)(A)(II) IDENTIFICATION ............................................................. 22
XXIII.  HEADINGS ...................................................................................................................... 22
XXIV.   FINAL JUDGMENT ......................................................................................................... 22
XXV.    APPENDICES .................................................................................................................. 22

WHEREAS, Plaintiff the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint on October 17, 2019, against defendants Mark Ford ("Ford"), Mark Ford Stables, Inc., Mark Ford Stage Road Property, Inc., and Ford Equine, Ltd. (collectively, "Defendants") alleging, *inter alia*, that Defendants have violated and continue to violate the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. §§ 1251 *et seq.*, at 90 Slaughter Road ("Slaughter Road Site") and 482/484 Stony Ford Road ("Ford Equine Site"), both in the Town of Wallkill in Orange County, New York;

WHEREAS, the Complaint alleges that from 2008 to at least through September 2013, Defendants used mechanized land-clearing and earth-moving equipment to discharge fill material into approximately two dozen acres of jurisdictional wetlands and rerouted streams on the Slaughter Road Site and the Ford Equine Site without authorization by the United States Army Corps of Engineers ("USACE"), in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a);

WHEREAS, the Complaint further alleges that from at least December 12, 2016, to the present, Defendants have owned and operated a medium Concentrated Animal Feeding Operation ("CAFO") within the meaning of 40 C.F.R. § 122.23(b)(6) that has discharged pollutants to navigable waters without a permit in violation of Section 301(a) of the CWA;

WHEREAS, defendants Ford and Mark Ford Stage Road Property, Inc. violated the terms and conditions of an applicable general permit under Section 402 of the CWA, 33 U.S.C. § 1342, governing the discharge of stormwater during construction activity; and

WHEREAS, the United States and the Defendants (collectively, the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, will avoid further litigation among the Parties, and is fair, reasonable, and in the public interest;

NOW, THEREFORE, with the consent of the Parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over the claims in the Complaint pursuant to 28 U.S.C. §§ 1331, 1345 and 1355 and Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and personal jurisdiction over the Defendants.

2.      Venue is proper pursuant to 33 U.S.C. § 1319(b), 28 U.S.C. § 1391(b) and (c), and § 1395(a), because Defendants reside and are located in this District and the violations alleged in the Complaint occurred in, and Defendants conduct business in, this District.

3.      For purposes of this Consent Decree and any action or proceeding to enforce this Consent Decree, Defendants consent to venue in the Southern District of New York and to this Court's jurisdiction over this Consent Decree, over any such action or proceeding, and over the Defendants.

4.      For purposes of this Consent Decree, Defendants agree that the Complaint states a claim upon which relief may be granted pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

## II.      ADMISSIONS

5.      Defendants admit, acknowledge, and accept responsibility for the following:

a.      Defendant Mark Ford is the president and sole shareholder of, and controls, defendants Mark Ford Stables, Inc., Ford Equine, Ltd., and Mark Ford Stage Road Property, Inc. (the "Ford Companies").

b.      At all times relevant to the Complaint, defendant Mark Ford Stage Road Property, Inc. has owned the Slaughter Road Site and defendant Mark Ford Stables, Inc., has engaged in the business of training harness racing horses on the Slaughter Road Site.

c.      At all times relevant to the complaint, defendant Ford Equine, Ltd., has owned the Ford Equine Site.

d.      From 2007 to 2016, Defendants and/or persons acting on their behalf, or with their consent and/or knowledge, used mechanized land-clearing and filling equipment to discharge fill material into 18.1 acres of federal jurisdictional wetlands and a tributary that are waters of the United States, at the Slaughter Road Site. Defendants never sought or obtained authorization from the USACE for the filling of these jurisdictional wetlands.

e.      From 2007 to 2013, Defendants and/or persons acting on their behalf, or with their consent and/or knowledge, caused the straightening or alteration of roughly 310 linear feet of Crystal Run Creek on the northern half of the Slaughter Road Site and roughly 1,460 linear feet of Crystal Run Creek on the southern half of the Slaughter Road Site.  Defendants also discharged approximately 150 linear feet of loose stone below the ordinary high water mark of Crystal Run Creek for the construction of the track's bridges.  Defendants never obtained authorization from USACE for the rerouting and filling of portions of Crystal Run Creek.

f.      From 2015 to 2016, Defendants and/or persons acting on their behalf, or with their consent and/or knowledge, used mechanized land-clearing and earth-moving equipment to discharge fill material into approximately 1.86 acres of federal jurisdictional wetlands at the Ford Equine Site, and rerouted roughly 900 linear feet of a stream that flowed southward through the eastern portion of the Ford Equine Site (the "Ford Equine Site Stream").  Defendants never sought or obtained authorization from USACE for the rerouting of the Ford Equine Site Stream and the filling of these federal jurisdictional wetlands.

g.      From at least December 12, 2016, to the present, the Slaughter Road Site and the Ford Equine Site constitute a medium CAFO within the meaning of 40 C.F.R. § 122.23(b)(2) and (6).  During the same time period, defendants have not obtained coverage under a CAFO Individual Permit or a CAFO General Permit for the Slaughter Road Site and the Ford Equine Site.

     h.      On December 12, 2016, EPA conducted an inspection at the Slaughter Road Site and found that process wastewater from the wash bays and/or stalls, the horse swimming pool, and the catch basins near the manure barns were discharging to ditches that flow to Crystal Run Creek.

     i.      Between January 19, 2016, and January 26, 2018, defendants Ford and Mark Ford Stage Road Property, Inc., were required to comply with the State Pollutant Discharge Elimination System General Permit for Stormwater Discharges from Construction Activity, specifically, Permit No. GP-0-15-002 ("Construction General Permit"), promulgated by the New York State Department of Environmental Conservation ("NYSDEC") on January 19, 2015.

     j.      On November 29, 2016, EPA conducted an inspection at the Slaughter Road Site and found unstabilized stockpiles of soil and mulch in the southwest portion of the Slaughter Road Site that lacked the erosion and sediment controls required by the Construction General Permit; several areas of the Slaughter Road Site lacked erosion or sediment controls that caused turbid stormwater to flow into a catch basin and ditch/stream tributaries in the southwest portion of the site which, in turn, flowed into Crystal Run Creek in violation of the Construction General Permit; and the monthly inspections required by the Construction General Permit had not been conducted from February 2016 to February 2017.

     k.      Through this conduct, Defendants violated the Clean Water Act.

### III.    APPLICABILITY

6.     The obligations of this Consent Decree apply to and are binding upon the United States and the Defendants, and any successors, assigns, or other entities or persons otherwise bound by law.

7.     No transfer of ownership or operation of the Slaughter Road Site and the Ford Equine Site, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligations to ensure that the terms of the Consent Decree are implemented unless: (1) the transferee agrees to undertake the obligations of this Consent Decree (other than Paragraph 11 (civil penalty)) and to be substituted for the Defendants as a party under the Consent Decree and thus be bound by the terms thereof; and (2) the United States consents to the substitution and to relieving Defendants of their obligations. The United States' consent may be conditioned on the transferee's providing satisfactory financial assurance that is capable of complying with the Consent Decree. The United States' decision not to provide consent shall not be subject to judicial review. At least 30 Days prior to any such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States Department of Justice in accordance with Section XIV (Notices). Any attempt to transfer ownership or operation of the Slaughter Road Site and the Ford Equine Site prior to Termination of this Consent Decree without complying with this Paragraph constitutes a violation of this Decree.

8.      Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

9.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.   DEFINITIONS

10.      Terms used in this Consent Decree that are defined in the CWA or in the regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a.      "Clean Water Act," "CWA," or "Act" shall mean the Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1251 *et seq*.

b.      "Complaint" shall mean the complaint filed by the United States in this action.

c.      "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXV), and all modifications made effective in accordance with Section XVII.

d.      "Corps" or "USACE" means the United States Army Corps of Engineers and any of its successor departments or agencies.

e.      "County" shall mean Orange County, New York, and any successors or assigns.

f.      "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of New York.

g.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

h.      "Defendants" shall mean Mark Ford, Mark Ford Stables, Inc., Mark Ford Stage Road Property, Inc., and Ford Equine, Ltd., and any successors or assigns.

i.      "Documents" shall be defined in accordance with Local Civil Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York.

j. "DOJ" means the United States Department of Justice and its successor departments or agencies, including the U.S. Attorney's Office for the Southern District of New York.

k. "Effective Date" shall have the definition provided in Section XV (Effective Date).

l. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

m. "Ford Equine Site" means the property located at 482/484 Stony Ford Road, in the Town of Wallkill, Orange County, New York.

n. "Mitigation Wetlands and Streams" refers to the wetlands and streams identified in the scope of work set forth in **Appendix A**.

o. "NYSDEC" shall mean the New York State Department of Environmental Conservation.

p. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

q. "Parties" shall mean the United States and Defendants.

r. "Section" shall mean, except when citing a provision of the CWA or other statute or regulation, a portion of this Consent Decree identified by a Roman numeral.

s. "Slaughter Road Site" means the property located at 90 Slaughter Road, in the Town of Wallkill, Orange County, New York.

t. "United States" shall mean the United States of America, acting on behalf of EPA.

## V.     CIVIL PENALTY

11.     Within 30 Days after the Effective Date, Defendants shall pay the sum of **$200,000** as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.

12.     Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT"), in accordance with instructions provided to Defendants by the United States after the Effective Date.  The payment instructions provided by the United States will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree.

13.     At the time of payment, Defendants shall send notice that payment has been made: (i) to EPA by email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ by email in accordance with Section XIV; and (iii) to EPA by email in accordance with

Section XIV.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Mark Ford, et al.*, and shall reference the civil action number 19 Civ. 9600, CDCS Number and DOJ case number 90-5-1-1-11797.

14.     Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating their federal income tax.

## VI.     INJUNCTIVE RELIEF

15.     <u>Permanent Injunction</u>.  Except as necessary to fulfill the restoration requirements of this Consent Decree, Defendants and Defendants' agents, successors, and assigns are enjoined from discharging any pollutant into waters of the United States, unless such discharge complies with the provisions of the CWA and regulations promulgated pursuant to the CWA.

16.     Except as specifically provided, nothing in this Consent Decree limits Defendants' obligations to comply with all applicable federal and state laws and regulations.

### *A.     Wetlands*

17.     <u>Mitigation Plan</u>:

    a.     Within 15 Days after the Effective Date, Defendants shall submit to EPA for its review as a Deliverable pursuant to Section VI.C (Deliverables), the name and qualifications of a Qualified Wetlands Professional ("QWP"), which is an individual with the training, education, and experience to identify potential aquatic resources, who will be retained by Defendants to prepare a draft mitigation plan in accordance with subparagraph 17(b).  The QWP shall, at a minimum, have obtained a degree in a wetland-related field and have completed a basic wetland delineation training course over a minimum of 24 hours of course time that has been provided by a professional trade association, professional society, governmental agency or university.

    b.     Within 60 Days after the Effective Date, Defendants, through their approved QWP, shall submit to EPA for its review a Proposed Mitigation Plan which will constitute a Deliverable pursuant to Section VI.C (Deliverables).  The Proposed Mitigation Plan will set forth a description of the work to be done to create or restore, via reestablishment, the wetlands and restore the streams identified in **Appendix A** (the "Mitigation Wetlands and Streams"), including removal of fill material, design of wetlands consistent with reference wetland conditions and a list of native wetlands and riparian plant species appropriate for the hydrologic regime and ecoregion.  The Proposed Mitigation Plan must be consistent with the USACE and EPA regulation entitled Compensatory Mitigation for Losses of Aquatic Resources, 73 Fed. Reg. 19594 (April 10, 2008) (codified at 33 C.F.R. Parts 325 and 332, and 40 C.F.R. Part 230) ("2008 Mitigation Rule") and address monitoring, maintenance, adaptive management, and long-term protection of the Mitigation Wetlands and Streams.

    c.     The Proposed Mitigation Plan shall include a detailed schedule of implementation milestones for the completion of creation and reestablishment work following EPA's approval of the plan.  The deadline for the completion of this work shall not exceed five (5) years after EPA's approval of the Proposed Mitigation Plan.

d.      The Proposed Mitigation Plan shall include a proposal for monitoring, adaptive management, and maintenance for the success of the Mitigation Wetlands and Streams consistent with the 2008 Mitigation Rule.  It shall propose, among other things: (i) biannual (spring and fall) monitoring of the Mitigation Wetlands and Streams for a period of no less than five (5) years; (ii) monitoring which includes overall observations of stream stability; percent relative vegetation coverage of the mitigation areas; descriptions of how wetland areas are developing consistent with the 1987 USACE wetland delineation manual and relevant regional supplement; whether corrective actions are needed; and dominant species of vegetation present; (iii) submission of this information in report form with relevant color photographs to EPA by December 31 of each monitored year; (iv) an adaptive management plan that anticipates potential challenges associated with the creation or reestablishment work and provides for the implementation of actions to address those challenges; (v) quantitative vegetation performance standards requiring at least 85% relative coverage of native species and no more than 5% relative coverage of invasive species in created or reestablished wetlands; and (vi) hydrologic performance standards requiring wetland hydrology of created or reestablished wetlands to be consist with the Technical Standard for Water-Table Monitoring of Potential Wetland Sites (ERDC TN-WRAP-05-2, June 2005).

e.      The Proposed Mitigation Plan shall propose long-term protection of the Mitigation Wetlands and Streams consistent with the 2008 Mitigation Rule and shall include a draft restrictive covenant, conservation easement, or other appropriate land use instrument designed to ensure the preservation of the Mitigation Wetlands and Streams in perpetuity as purely natural ("Deed Restriction").  The Deed Restriction shall run with the land and bind Defendants and their agents, successors, and assigns.  The Deed Restriction shall provide the United States with the right to enforce its requirements by appropriate legal proceedings, including but not limited to enforcement of this Consent Decree, and it shall also provide the United States and EPA with the right to access the Slaughter Road Site and the Ford Equine Site for the purpose of assessing compliance.

f.      Within 30 Days after EPA's approval of the draft instrument required by subparagraph 17(e) above, Defendants shall execute and record it, as well as a true and correct copy of the Consent Decree, with the recorder of deeds in Orange County, New York.  Thereafter, each deed, title, conservation easement, or other instrument conveying an interest in any portion of the Slaughter Road Site and/or the Ford Equine Site on which the Mitigation Wetlands and Streams are situated shall (1) contain a notice stating that the property on which the Mitigation Wetlands and Streams are situated is subject to this Consent Decree and land use instrument; and (2) refer to the recorded location of this Consent Decree and any restrictions applicable to the property on which the Mitigation Wetlands and Streams are situated under this Consent Decree.

g.      Within 30 Days after the recording required by subparagraph 17(f) above, Defendants shall provide written notice of such completion, along with a true and correct copy of the recorded instrument and Consent Decree, to the United States and EPA at the addresses specified in Section XIV (Notices).

7

h.      If, during the duration of this Consent Decree, the Deed Restrictions described in Paragraph 17(e) are found to be defective or unlawful, the United States may require the Defendants or their successors or assigns, to obtain the granting of a deed restriction for the Slaughter Road Site and/or the Ford Equine Site that complies with applicable law.

i.      Following EPA's approval of the Proposed Mitigation Plan, Defendants shall comply with the terms and conditions of the Mitigation Plan as approved ("Final Mitigation Plan").

j.      Within 30 Days after completion of the work set forth in the Final Mitigation Plan, Defendants shall provide written notice to the United States and EPA at the addresses specified in Section XIV (Notices).

### B.      CAFO

18.      Defendants must immediately take interim measures to stop the unauthorized discharges of process wastewater, including from the swimming pool, manure storage barns, and horse wash operations at the Slaughter Road Site and the Ford Equine Site.  These interim measures must remain in place until Defendants fully implement the below-described Comprehensive Nutrient Management Plan ("CNMP"), pursuant to Paragraph 22.  The interim measures shall include, but not be limited to, the following:

a.      Containment of all process wastewater from the swimming pool for off-site disposal.  Defendants shall provide copies of invoices or other records relating to the hauling off-site of process wastewater from the swimming pool to EPA on a quarterly basis, in compliance with Section VII (Quarterly Reports).

b.      Continuation of Best Management Practices ("BMPs"), which ensure all bedding, manure, and feed shall be stored under cover or inside a building at all times, and not cause a discharge to nearby catch basins.

19.      No later than 15 Days after the Effective Date, Defendants shall retain an AEM Certified Planner to develop a CNMP that addresses all sources of process wastewater generated by the Slaughter Road Site and the Ford Equine Site and, at a minimum, meets the requirements under 40 C.F.R. § 122.42(e).

20.      No later than 180 Days after the Effective Date, Defendants shall develop a CNMP.  The CNMP shall contain a performance schedule for completion of all required tasks. Defendants shall submit a certification to EPA that a CNMP is complete, and that the CNMP will be at the Slaughter Road Site for review by EPA and NYSDEC on request.

21.      In addition to the minimum requirements for CNMPs found at 40 C.F.R. § 122.42(e), the CNMP shall specifically include:

a.      Methods for containing all process wastewater from the swimming pool for either off-site disposal, or an alternate disposal method designed and implemented, initially under the direction of the Defendants' AEM Certified Planner;

      b.      A process for continuing the interim BMPs at the manure storage barns, as described above; and

      c.      BMPs for preventing the discharge of process wastewater from the horse washing operations.

22.     No later than 18 months after development of the CNMP, Defendants shall fully implement the CNMP and shall thereafter comply fully with the CNMP.

23.     No later than 30 Days after full implementation of the CNMP, Defendants shall submit a complete application to NYSDEC for applicable CAFO permit coverage.  Defendants must provide EPA with a copy of the complete application to NYSDEC within five (5) Days of Defendants' submittal.

24.     Nothing in this Section shall be construed to prevent Defendants from applying to terminate CAFO permit coverage, under applicable regulations, in the event that they can establish, to NYSDEC's satisfaction, that they are no longer operating a CAFO.

## C.    *Approval/Acceptance of Deliverables*

25.     After review of any plan, report, or other item that is required to be submitted for EPA approval under this Consent Decree ("Deliverable"), EPA will in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

26.     If the submission is approved pursuant to Paragraph 25(a), Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part pursuant to Paragraphs 25(b) or (c), Defendants shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section X (Dispute Resolution).

27.     If the submission is disapproved in whole or in part pursuant to Paragraphs 25(c) or (d), Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

28.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, or EPA may itself correct any deficiencies subject to Defendants' right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

29.     If Defendants elect to invoke Dispute Resolution as set forth in Paragraphs 26 or 28, Defendants shall do so by sending a Notice of Dispute in accordance with Paragraph 60 within 30 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

30.     Any stipulated penalties applicable to the original submission, as provided in Section VIII, accrue during the 45 Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

### D.      Permits

31.     Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VII.    REPORTING AND MEETING REQUIREMENTS

32.     <u>Quarterly Reports</u>.  Upon the Effective Date until the termination of this Consent Decree pursuant to Section XVIII (Termination), Defendants shall submit by electronic mail to DOJ and EPA at the addresses set forth Section XIV (Notices), quarterly reports for the preceding Calendar Quarter on January 15, April 15, July 15, and October 15 of each year.  If the first Calendar Quarter after the Effective Date consists of 30 days or less, the Quarterly Report for that Calendar Quarter shall not be required, and the information will be included in the next Quarterly Report.

33.     The Quarterly Reports shall include, at a minimum:

a.      A description of the actions taken by Defendants to comply with this Consent Decree; the status of any construction or compliance measures; problems encountered or anticipated, together with implemented or proposed solutions; status of permit applications; operation and maintenance; and reports to state and local agencies.

b.      A description of any non-compliance with any requirements of this Consent Decree, and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation, or to prevent future non-compliance.  If the cause of the non-compliance cannot be fully explained at the time the Quarterly Report is due, Defendants shall so state in their Quarterly Report. Defendants shall investigate the cause of the violation and shall then submit an amendment to the Quarterly Report, including a full explanation of the cause of the

violation, within 30 Days of the Day Defendants become aware of the cause of the violation.

       c.     If Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Defendants shall notify DOJ and EPA of such violation and its likely duration, by electronic mail, within 10 business days of the Day Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

       d.     If Defendants have already submitted a Deliverable to the EPA, NYSDEC, and/or the United States, Defendants shall in the Quarterly Report reference that deliverable and its date of submission.

       e.     Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section IX (Force Majeure).

34.     Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendants' performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA's Chief of the Water Compliance Branch, Doughlas McKenna, by telephone at (212) 637-4244, and by email to McKenna.Douglas@epa.gov, as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

35.     Each report submitted by Defendants under this Section shall be signed by Ford on behalf of all Defendants and shall include the following certification:

I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

36.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

37.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

38.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

39.     <u>Meetings and Reviews</u>.  The Parties shall meet and confer on at least a semi-annual basis on February 1 and August 1 of each year (or the first business day thereafter, if February 1 or August 1 is a Saturday, Sunday, or federal holiday), unless the Parties agree, in writing, to less frequent progress meetings.

40.     Throughout the term of this Consent Decree, a Party may wish to discuss issues relating to the activities and the schedule of activities required by this Consent Decree.  The Parties agree that, at the request of any Party, the other Parties shall discuss, at the semi-annual progress meeting as provided for in Paragraph 39 or at a separately arranged meeting, any issue or request relating to the activities and the schedule of activities required by this Consent Decree which is raised by a Party.  The Parties shall send to any such meeting responsible and appropriate representatives to discuss and address the issues raised in good faith.  The Party raising the issue or initiating a request shall provide appropriate technical justification. The other Party shall, in good faith, review the technical information provided, respond to the issues raised, address the technical information relevant to such issues, and, if applicable, timely respond in writing to any written request made by the other Party.

## VIII.   STIPULATED PENALTIES

41.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

42.     <u>Late Payment of Civil Penalty</u>.  If Defendants fail to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $2,000 per Day for each Day that the payment is late.

43.     <u>Injunctive Relief</u>.

   a.     The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in subparagraph 43(b):

| Penalty per violation per day | Period of non-compliance |
|---|---|
| $250 per day | 1st through 30th Day |
| $500 per day | 31st through 60th Day |
| $750 per day | 61st Day and beyond |

   b.     A violation under Paragraph 43(a) is a failure to: submit to EPA the Deliverables identified in Paragraphs 17(a) and (b); comply with all agreed-upon deadlines, timelines and performance obligations set forth in the approved Deliverables identified in Paragraph 17; take interim measures to stop the unauthorized discharges of

12

process wastewater, as required by Paragraph 18; and retain an AEM, develop a CNMP, provide a CNMP certification, submit an application to NYSDEC for applicable CAFO permit coverage, and achieve full implementation of the CNMP, as required by Paragraphs 19, 20, 22, and 23.

44.     Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VII:

| Penalty per violation per day | Period of non-compliance |
|---|---|
| $250 per day | 1st through 30th Day |
| $500 per day | 31st through 60th Day |
| $750 per day | 61st Day and beyond |

45.     Transfer of Ownership.  If, prior to Termination of this Consent Decree, Defendants transfer ownership of either the  Slaughter Road Site or the Ford Equine Site without first complying with the requirements of  Paragraph 7, Defendants shall pay a stipulated penalty of $2,000 per day until such consent is obtained or ownership reverts to Defendants.

46.     Except as provided in subparagraphs 49(b) and (c), stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

47.     Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

48.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

49.     Stipulated penalties shall continue to accrue as provided in this Section, during any Dispute Resolution (Section X), but need not be paid until the following:

    a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties agreed to or as determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

    b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

     c.     If any Party appeals the Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

50.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 12 and with the confirmation notices required by Paragraph 13, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

51.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

52.     The payment of penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

53.     <u>Non-Exclusivity of Remedy</u>. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX. FORCE MAJEURE

54.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

55.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice by email to the United States and EPA, in accordance with Section XIV (Notices), within 3 business Days of when Defendants first knew or should have known that the event might cause a delay.  Within 7 Days thereafter, Defendants shall provide in writing to the United States and EPA, in accordance with Section XIV (Notices), an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any

14

measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

56.      If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the United States for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

57.      If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Defendants in writing of its decision.

58.      If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 14 Days after receipt of notice from the United States. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 54 and 55. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to the United States and the Court.

## X.      DISPUTE RESOLUTION

59.      Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

60.      Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal

negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 14 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

61.    Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

62.    The United States will send Defendants its Statement of Position within 45 Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position is binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

63.    Judicial Dispute Resolution.  Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute.  The motion (a) must be filed within 14 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph, unless the Court requires the filing of a pre-motion letter before the filing of a motion, in which case the pre-motion letter must be filed within such 14-Day period; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 60, unless the United States raises a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

64.    The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, as permitted by the Local Rules and any order of the Court.

65.    Standard of Review

a.    Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 61 pertaining to the adequacy or appropriateness of submissions, filings, plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.     Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 61, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

66.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 49.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

67.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by Defendants or their representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendants' compliance with this Consent Decree.

68.     Upon request, Defendants shall provide EPA or its authorized representatives splits of any samples taken by Defendants.  Upon request, EPA shall provide Defendants splits of any samples taken by EPA.

69.     Until five (5) years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of their obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph to the United States and EPA.

70.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United State at least 90 Days prior to the destruction of

any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

71.    Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

72.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

73.    This Consent Decree resolves only the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

74.    Reservation of Rights.  The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 73.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, within, or posed by the Slaughter Road Site and the Ford Equine Site, whether related to the violations addressed in this Consent Decree or otherwise.

75.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 73.

76.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA or with any other provisions of federal, state, or local laws, regulations, or permits, if applicable.

77.     This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

78.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.   COSTS

79.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XIV.   NOTICES

80.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by electronic mail, addressed as follows:

|  |  |
|---|---|
| To the United States and/or DOJ: | Zachary G. Bannon<br>Tomoko Onozawa<br>Assistant U.S. Attorneys<br>U.S. Attorney's Office, Southern District of New York<br>Email:     zachary.bannon@usdoj.gov<br>              tomoko.onozawa@usdoj.gov |
| To EPA: | Kara E. Murphy<br>Assistant Regional Counsel<br>U.S. Environmental Protection Agency, Region 2<br>Email:     murphy.kara@epa.gov |

To Defendants:          Jonathan A. Murphy, Esq.
                        Bleakley Platt & Schmidt, LLP
                        1 North Lexington Avenue
                        White Plains, New York 10601
                        Tel.: 914-287-6165
                        Email:      jamurphy@bpslaw.com

                        Mark Ford
                        125 Stony Ford Road
                        Campbell Hall, New York 10916
                        Tel.: 973-568-3253
                        Email: markford1070@gmail.com

81.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above (including by requesting notice by U.S. Mail rather than e-mail).

82.     Notices submitted pursuant to this Section shall be deemed submitted upon transmission by electronic mail or mailing (if mailing is requested), unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

83.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.   RETENTION OF JURISDICTION

84.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

85.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

86.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 65, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

87.     After Defendants have completed the requirements of Section VI (Injunctive Relief), and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

88.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have regarding termination.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

89.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of their Request for Termination.

## XIX.   PUBLIC PARTICIPATION

90.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX.   SIGNATORIES/SERVICE

91.      Each undersigned representative of Defendants and of the United States identified on the signature pages below certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

92.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.   INTEGRATION

93.     This Consent Decree, including Deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject

matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the subject matter of the Decree herein.

## XXII.  26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION

94.     For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of the obligations of Paragraphs 8, 15, 17-23, 25-26, 31-33, 35, 39-40, 67-69, and related Appendix A is restitution, remediation, or required to come into compliance with law.

## XXIII. HEADINGS

95.     Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXIV. FINAL JUDGMENT

96.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

## XXV.  APPENDICES

97.     Appendix A is attached to and part of this Consent Decree.


Dated and entered this 11th day of March, 2024.


_____
HONORABLE ANDREW E. KRAUSE
UNITED STATES MAGISTRATE JUDGE

Dated:      March 11, 2024
              _____
              White Plains, New York

*Signature Page for the Consent Decree entered in the matter of <u>United States v. Mark Ford,</u>*
*<u>Mark Ford Stables, Inc., Mark Ford Stage Road Property, Inc., and Ford Equine, Ltd.</u>*

FOR THE UNITED STATES OF AMERICA:

Dated: _____August 17, 2023_____

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____
ZACHARY G. BANNON
TOMOKO ONOZAWA
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2728/2721
zachary.bannon@usdoj.gov
tomoko.onozawa@usdoj.gov

23

*Signature Page for the Consent Decree entered in the matter of United States v. Mark Ford, Mark Ford Stables, Inc., Mark Ford Stage Road Property, Inc., and Ford Equine, Ltd.*

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated:        8/17/2023

BENJAMIN BAHK
Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


KRISTIN TERRY
Attorney-Adviser
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

24

*Signature Page for the Consent Decree entered in the matter of <u>United States v. Mark Ford,</u>*
*<u>Mark Ford Stables, Inc., Mark Ford Stage Road Property, Inc., and Ford Equine, Ltd.</u>*

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 2:

Dated:   August 18, 2023

PAUL SIMON
Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, New York 10007

OF COUNSEL:

KARA E. MURPHY
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, New York 10007

25

*Signature Page for the Consent Decree entered in the matter of <u>United States v. Mark Ford,</u>*
*<u>Mark Ford Stables, Inc., Mark Ford Stage Road Property, Inc., and Ford Equine, Ltd.</u>*

FOR THE DEFENDANTS:

Dated:   August 17, 2023

*Attorney for Defendants*

By: _____

Jonathan A. Murphy
Bleakley Platt & Schmidt, LLP
One North Lexington Avenue
White Plains, New York 10601
Tel: (914) 287-6165
Fax: (914) 683-6956
Email: jamurphy@bpslaw.com

_____

MARK FORD
Individually and on behalf of Mark Ford Stables,
Inc., Mark Ford Stage Road Property, Inc., and
Ford Equine, Ltd.

# Appendix A



Imagery Date: 9/18/2

PARTIAL PLAN
SCALE: 1"=80'

RESTORED CHANNEL LOCATION

EXISTING (2022) CHANNEL
LOCATION

RESTORATION AREA
(≈ 5.3 ACRES)

Slaughter Rd

JRFA

DATE   APRIL 2023

G SHEET  1  OF  2

DWG. NO.   605—001

WARNING - IT IS A VIOLATION OF NEW YORK EDUCATION LAW,
SECTION 7209.2 OR ANY PERSON, UNLESS HE IS ACTING
UNDER THE DIRECTION OF A LICENSED PROFESSIONAL ENGINEER
OR LAND SURVEYOR, TO ALTER AN ITEM IN ANY WAY.
IF AN ITEM BEARING THE SEAL OF AN ENGINEER OR LAND SURVEYOR
IS ALTERED, THE ALTERING ENGINEER OR LAND SURVEYOR SHALL COMPLY WITH THE
REQUIREMENTS OF NEW YORK EDUCATION LAW, SECTION 7209.2

FIGURE 1
PROPOSED RESTORED
FEMA FLOODPLAIN
SCALE 1" = 80'

TOWN OF WALLKILL
ORANGE COUNTY, NEW YORK
MARK FORD STABLES
SLAUGHTER ROAD

J  J. ROBERT FOLCHETTI &
R  ASSOCIATES, L.L.C.
F  CIVIL / ENVIRONMENTAL ENGINEERS
A  www.jrfa.com
   31 MONTGOMERY ST
   BREWSTER, NY 10509
   845-363-7342

DES. _____
DWG. _____
CHK. _____

REVISIONS

NO. | BY | DATE | REMARKS
1 | KB | 08/25/23 | REV. PER EPA COMMENTS



FIGURE 7
REVISED WETLAND & STREAM
RESTORATION PLAN
SCALE 1"=120'

TOWN OF WALLKILL
ORANGE COUNTY, NEW YORK
MARK FORD STABLES
SLAUGHTER ROAD & STAGE ROAD SITES

J. ROBERT FOLCHETTI &
ASSOCIATES, L.L.C.
CIVIL ENGINEERING & ENVIRONMENTAL ENGINEERS
www.jrfa.com

DATE: NOVEMBER 2022
G SHEET 1 OF 1
DWG. NO. 60550IG001
JRFA

### TABLE OF WETLAND AREAS

| SYMBOL | DESCRIPTION | EXISTING WETLAND AREA 'A' & 'B' | EXISTING WETLAND AREA (ACRES) | CREATION AREA (ACRES) | CREATION AREA (SF) | SOIL MATERIAL CUT (CY) |
|---|---|---|---|---|---|---|
| A | WETLAND CREATION | — | — | 1.095 | 47,716 | 2,277 |
| B | WETLAND CREATION | — | — | 0.998 | 43,469 | 2,560 |
| C | WETLAND CREATION | — | — | 0.037 | 1,630 | 362 |
| D | WETLAND CREATION | — | — | 0.062 | 2,708 | 200 |
| E | WETLAND CREATION | — | — | 1.537 | 66,951 | 16,992 |
| F | WETLAND CREATION | — | — | 1.213 | 52,825 | 115 |
| G | WETLAND CREATION | — | — | 7.513 | 327,280 | 48,486 |
| | TOTALS | 0.436 | 0.436 AC. | 12.455 AC. | 543,552 | 70,552 |

WATERSHED
AREA
A=19.6 ACRES